**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**THOMAS E. BROWN,**

        **Plaintiff,**

**-vs-**                                    **Case No. 6:05-cv-1855-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

## ORDER

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for Social Security disability insurance benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED**.

### *PROCEDURAL BACKGROUND*

Plaintiff protectively filed his application for a period of disability and disability insurance benefits on November 12, 2002, alleging an onset of disability as of October 21, 2002 (R. 72-75). Plaintiff's claim was denied initially and upon reconsideration, and he requested and received a hearing before an Administrative Law Judge ("the ALJ"), which was held on May 2, 2005 (R. 447-67). The ALJ issued an unfavorable decision on August 18, 2005 (R. 11-23). Plaintiff filed a request for review, which the Appeals Council denied on October 24, 2005 (R. 6-8), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed this action for review (Doc. No. 1).

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims to be disabled due to hepatitis C and depression (R. 89).

*Summary of Evidence Before the ALJ*

At the time of the hearing, Plaintiff was forty-seven years old, with a high school education (GED), and additional training during his twenty-three years with the Coast Guard (R. 449-50). Prior to October 21, 2002, Plaintiff was employed at Fisher Island as a port captain operating ferry and tug boats (R. 82, 90, 98-99, 128-130).

The medical evidence is set forth in the ALJ's decision. By way of relevant summary, in January 1999, years prior to the alleged onset date, Plaintiff was diagnosed with chronic active hepatitis (R. 289). Thereafter, Plaintiff underwent treatment with Rebetron, which he received for six months, until it was determined that he was not responding (R. 259, 266-67). During the treatment, Plaintiff was fatigued and irritable, and developed hypothyroidism (R. 267-81), but appeared to feel better when the treatments stopped (R. 259, 261, 266). In a letter dated January 7, 2000, Plaintiff's gastroenterologist advised that the virus was still present but Plaintiff "was feeling much better having discontinued the Rebetron therapy." (R. 257).

In September of 2000, Plaintiff underwent a right upper quadrant ultrasound, which showed a normal sized liver and normal pancreas (R. 245). Plaintiff underwent a second round of interferon injections over the course of 40 weeks, but Plaintiff again failed to respond (R. 15, 205). On September 28, 2001, Plaintiff underwent an ultrasound of the liver which showed no abnormality (R. 359). A liver biopsy performed on October 5, 2001, revealed chronic hepatitis C with minimal activity and minimal portal fibrosis (Grade 1, Stage 1) (R. 200).

On May 3, 2002, Plaintiff underwent an ultrasound of the abdomen (R. 198). The liver demonstrated no focal infiltrates, no sonographic abnormalities were identified and no indication of

ascites were noted. Plaintiff returned to his gastroenterologist on May 6, 2002, complaining of multiple arthralgias since discontinuing treatment, and it was decided that he would undergo a third round of injections (R. 196).[1]

On October 1, 2002, shortly before the alleged onset date of October 21, 2002, Plaintiff's treating gastroenterologist, Dr. Miglcovsky, wrote a letter to the Coast Guard Medical Director, stating that Plaintiff was undergoing rigorous therapy for hepatitis C requiring PEG Interferon and Ribavirin, and during the 48 week course of therapy, he was unable to carry out his normal activities (R.178). Dr. Miglcovsky noted that Plaintiff was experiencing increased irritability, decreased concentration, fatigue, arthralgias and myalgias. It was felt that Plaintiff "would benefit from long-term disability until the virus has been eradicated or the therapy has been completed." *Id.*

On October 9, 2002, Plaintiff was evaluated by psychiatrist Douglas M. Lanes, M.D. (R. 301). He was given a diagnosis of reactive depression secondary to hepatitis C with a GAF of 60.

Plaintiff presented to the Veteran's Administration on October 21, 2002, the alleged date of onset, in order to establish treatment (R. 316). Plaintiff complained of intermittent fatigue, pain, shortness of breath and fever, which was "not present at this time." *Id.* Examination was unremarkable (R. 314-16).

On December 17, 2002, Dr. Miglcovsky noted that Plaintiff was having his best response yet to the injections, although he continued to complain of shortness of breath, dyspnea on exertion, weakness and fatigue (R. 170). It was noted that Plaintiff was "emotionally stable." *Id.*

---

[1]Around this time, Plaintiff was also experiencing numbness in his right hand and sometimes the left (R. 140-41). Additionally, a nerve conduction test performed on February 4, 2002, revealed early median nerve changes (R. 163). These records pre-date the alleged onset of disability, and Plaintiff has not asserted this as a basis for his disability claim.

A residual functional capacity assessment was completed by a non-examining state agency physician on January 7, 2003 (R. 290-97). The examiner felt Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and could sit for about 6 hours and stand or walk for about 6 hours in an eight hour workday (R. 291).

On January 9, 2003, Plaintiff returned to the VA clinic (R. 317). On examination, he was alert and oriented, pleasant and cooperative. His abdomen was non-tender and without masses, and his skin was without rashes or jaundice. His temperature was normal, and he rated his pain a "0" out of ten (R. 318).

On January 14, 2003, Dr. Lane completed a treating psychiatrist mental health report indicating that Plaintiff was suffering from an anxious and depressed mood secondary to the hepatitis, with poor concentration (R. 298). Plaintiff was assessed with a GAF of fifty-five (R. 299).

On January 15, 2003, a nonexamining state agency psychologist completed a Psychiatric Review Technique form, finding Plaintiff to have a non-severe impairment of affective disorder, with only mild difficulties in maintaining social function, concentration, persistence or pace (R. 303-08).

Plaintiff returned to the VA on January 30, 2003, rating his pain a 4 out of 10 (R. 319). He described flu type symptoms with joint aches and occasional low grade fevers (R. 321). It was noted that Plaintiff was eligible for treatment as "SC less than 50%" (R. 332).[2] Plaintiff was seen again in February, and once again noted generalized fatigue and body aches (R. 324).

On March 4, 2003, a nonexamining state agency psychologist completed a Psychiatric Review Technique form and found Plaintiff to have a non-severe impairment of affective disorder, with mild

---

[2] It is assumed this means Plaintiff was eligible for treatment as his illness was deemed a service connected impairment of less than 50%.

difficulties noted in ability to maintain concentration, persistence or pace (R. 340-45). On March 10, 2003, a nonexamining state agency physician completed a physical residual functional capacity assessment and found Plaintiff to be able to occasionally carry 20 pounds and frequently lift 10; stand and or walk for about 6 hours and sit for about 6 hours in an eight hour workday, with occasional postural limitations (R. 347-54).

On June 24, 2003, Plaintiff returned to Dr. Miglcovsky (R. 406). He denied abdominal pain and his appetite was stable, without weight loss. Plaintiff subsequently underwent a colonoscopy in July 2003, which revealed colonic polyps, diverticulosis and internal hemorrhoids (R. 407).

On January 15, 2004, Plaintiff was seen by a psychologist at the VA for his mood disorder (R. 399). He reported that he had completed the hepatitis C testing and was awaiting results. He reported anxiety about his pending discharge from the Coast Guard. His GAF was assessed at 50. Plaintiff returned to the psychologist on February 12, 2004, and reported that his test results showed that he still had the hepatitis virus (R. 398). It was noted that Plaintiff was "clearly disappointed" and that "he feels okay physically, but he still struggles mentally with the knowledge that he has this virus in him." *Id.* Assessment remained mood disorder secondary to medical condition.

On March 12, 2004, Plaintiff presented to a psychiatrist at the VA for continued treatment of his mood disorder (R. 397-398). It was noted that Plaintiff was depressed over the failure of the third treatment to eradicate the virus. Plaintiff reported that he had not been able to attend and concentrate sufficient to work and had been too depressed. He reported that the Ritalin that was prescribed had helped his energy, but he still "gets extremely tired toward the latter part of the day." *Id.* On mental status examination, Plaintiff was alert and oriented, well groomed and without suicidal ideation. No thought disorder was present, nor delusions, hallucinations and his judgment was deemed to be fair

(R. 397-8). The psychiatrist assessed Plaintiff with a mood disorder and indicated a GAF of thirty-nine. His medications were adjusted.

A CT scab of the abdomen was normal on July 2, 2004 (R. 412).

Plaintiff returned to the psychiatrist on July 13, 2004 (R. 397). He reported that he walks with his wife two miles a day and exercises every day at the gym, working with a trainer on Mondays and Fridays. He reported decreased energy and interests. On mental status examination, he was alert and oriented, depressed, and judgment was fair. Assessment remained mood disorder and his GAF was felt to be 41.

On August 4, 2004, Dr. Boyd of the Veteran's Administration completed a Hepatitis C Residual Functional Capacity Questionnaire (R. 402-405, 442-446). Dr. Boyd indicated that Plaintiff's prognosis was guarded and Plaintiff had the symptoms of chronic fatigue, muscle and joint aches, difficulty concentrating, weakness and sleep disturbance. It was noted that Plaintiff was not on any therapy. Dr. Boyd concluded that Plaintiff could sit for about two hours out of an eight-hour day, stand for less than two hours a day, but would not be capable of working an eight-hour workday (R. 444). Dr. Boyd stated that Plaintiff's experience of fatigue and pain would interfere with attention and concentration "constantly" and that he was incapable of even low stress jobs. It was felt that Plaintiff could lift 20 pounds occasionally, but could sit for only 15 minutes without needing to get up, and could stand for only five minutes before needing to sit down (R. 443, 444).

Plaintiff returned to the VA on September 23, 2004, complaining of generalized joint pain that was relieved with medications, and 3 skin lesions (R. 428). He was referred to a rheumatologist at the VA. Thereafter, on October 27, 2004, the rheumatologist examined Plaintiff and found no joint

swelling and no signs of synovitis in any joint (R. 423-24). It was noted that Plaintiff had a positive ANA blood test probably caused by the chronic hepatitis C infection.

On December 22, 2004, Plaintiff reported to the gastroenterology clinic at the VA. On examination, no abnormalities were noted (R. 422-23). Plaintiff reported "some fatigue" and that he had been working with a personal trainer for weight reduction (R. 422). Plaintiff also reported to the pharmacy to pick up the Ritalin that was prescribed (R. 421). He was assessed with mood disorder, controlled on current therapy. Plaintiff saw the VA psychiatrist on January 19, 2005, and reported that the medications helped improve and stabilize his mood (R. 421). He noted that he works out at the gym in the morning, but still feels a lack of energy. His mood was neutral and medications were continued.

A liver sonogram taken on January 10, 2005, showed diffuse fatty infiltration of the liver with mild hepatomegaly (R. 412).

Plaintiff appeared and testified at his hearing. He stated that he had been able to work through the first two rounds of treatment for his hepatitis, "but the third one was just too much." (R. 450). He stated that he had a 102 fever for the entire year. *Id.* He stated that he ended the treatment in August 2003, and was receiving 70 percent disability from the VA (R. 453).[3] After October 2002, Plaintiff said he experienced fever, joint pain, and "I couldn't be up or around for more than 30 minutes" (R. 457). He also complained of no appetite and sleep and concentration problems (R. 457-58). He felt that he could sit for half and hour and stand for 10 minutes without having to change his position (R. 462). He could walk for maybe half a mile (R. 463). He could drive for about 100 miles on his own

---

[3]In a later reference, Plaintiff states that he was "assigned unemployability status paid at 100 percent." (R. 454).

(R. 463), but drives 250 miles on his own to the VA (R. 464). He testified that he does not do anything outside the home and does what he can in the home.

No vocational expert testified.

Based on a review of the record, the ALJ determined that Plaintiff had the impairment of hepatitis C, but that Plaintiff's impairment of depression was not severe, within the meaning of the regulations (R. 18). While finding that there was "no question that Mr. Brown was unable to perform SGA[4] at any level of physical exertion during the third round of his Interferon injections," the ALJ found that Plaintiff had 37 weeks of treatment after he stopped working, and improved upon stopping the injections (R. 19). Thus, Plaintiff was not disabled for 12 consecutive months, as required for benefits. *Id.* The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work, and was not disabled (R. 23).

## *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560

---

[4]Substantial gainful activity.

(11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). The ALJ found that Plaintiff was not performing substantial gainful activity. Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The ALJ found here that Plaintiff's hepatitis was, in fact, severe within the meaning of this regulation. Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). No such finding was made here. Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). The ALJ found here that Plaintiff could not return to his past relevant work (R. 23), thus the case proceeded to the fifth and

final step: if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  Here, the ALJ applied the Medical Vocational guidelines ("the Grids") and determined that Plaintiff retained the capacity for work that exists in significant numbers in the national economy and was therefore not under a disability (R. 22).

Plaintiff asserts that the ALJ committed error in determining Plaintiff's RFC, in view of the treating physician's opinion that Plaintiff could not work; that the ALJ did not properly evaluate Plaintiff's mental impairment; that the ALJ erred in failing to utilize a vocational expert; and that the ALJ did not properly evaluate Plaintiff's allegations of pain, nor his credibility.  For the following reasons, the Court is not persuaded.

**Treating Physicians**

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, Plaintiff points out that the ALJ's decision is inconsistent with the opinion of treating physician Dr. Boyd, and argues that the ALJ erred in not giving this opinion considerable weight. The Court disagrees. The ALJ noted that the opinion was given no weight because it was not signed nor dated; and was completed based on the claimant's subjective complaints and not based on objective findings, which showed no damage to the liver and decrease of symptoms once the treatments stopped. The ALJ also noted the inconsistencies between the limitations found by Dr. Boyd and the ability of Plaintiff to work out every day, with a trainer twice a week, and walk two miles a day with his wife (R. 20). At issue is whether these findings are supported by substantial evidence.

Plaintiff contends (correctly) that, in fact, the record contains *two* copies of Dr. Boyd's opinion, and one copy is, indeed, signed and dated. Thus, there is no record support for the ALJ's first reason for discrediting the opinion. Nonetheless, the ALJ gave numerous reasons for discrediting

the opinion, and the Court finds substantial record support for the remaining reasons. As summarized above, the record is replete with normal objective or clinical findings. CT scans were normal, physical examinations were unremarkable. Although Plaintiff claims to have a constant 102 degree fever, his temperatures were virtually always normal on examination (*see, e.g.,* R. 318, 325, 313, 426, 429). As for the limitations expressed by Dr. Boyd, as noted by the ALJ, Plaintiff admitted to a much higher level of physical activity (walking two miles a day with his wife, working out every day and twice a week with a trainer) just three weeks prior to issuance of this opinion. On September 23, 2004, Plaintiff reported that his joint pain was relieved by medication and on October 25, 2004, he reported that his pain level with medications was only 2 on a scale of 0-10 (R. 428). At hearing, Plaintiff reported that he drove 250 miles to the VA, a feat impossible for a man limited to 15 minutes sitting at a time, and "constant" inability to concentrate. The ALJ's determination with respect to the opinion of Dr. Boyd is supported by substantial evidence and will not therefore be disturbed.

Plaintiff next contends that Dr. Boyd's opinion should have been given weight in that it is consistent with the VA's disability rating of 100%. While the Court agrees that, in a proper case, great weight should be accorded a VA disability rating,[5] here, the Court finds no evidence *from the VA,* that such a rating was ever made. Instead, Plaintiff offers his testimony that when he stopped working he was getting 10 percent, which increased to 40, then 70, and eventually, in either "August," "October, November", "the first of the year," "April" or "March" 2004, he received 100%. (R. 453-54). By contrast, the VA records indicate only that Plaintiff was eligible for benefits due to a service connected impairment of less than 50% (*e.g.* R. 332). Regardless, as noted by Plaintiff, the VA's

---

[5]*See Olson v. Schweiker,* 663 F. 2d 593, 597 (5th Cir. 1981).

rating is not binding on the Commissioner, especially as here, when the rating itself (and thus the rationale for the rating) is not before the ALJ.

### Severity of the Alleged Depression

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that his impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The ALJ found that Plaintiff's depression "results in no vocationally relevant limitations" and was therefore not "severe" (R. 18). As support for this finding, the ALJ noted that Plaintiff's depression was secondary to his physical condition and that his mood improved once treatments stopped (R. 20). The ALJ noted that in December 2002, Plaintiff's treating gastroenterologist found him to be "emotionally stable;" and in December 2004, his psychiatrist noted that the mood disorder was controlled on current medication and therapy. Additionally, the ALJ noted that Plaintiff was able to function adequately, according to treatment notes that indicated he got along well with his wife, his concentration was improved with Ritalin, and he was capable of working out for hours on a daily basis (R. 21). As such, the ALJ found that as a result of Plaintiff's mental impairments, he would have mild restriction of activities of daily living, mild difficulty in social functioning, mild difficulty in maintaining concentration, persistence or pace, and had never had an episode of decompensation,

and therefore, his depression was not a severe impairment. These findings are supported by substantial record evidence.

Plaintiff correctly notes that the ALJ did not mention Plaintiff's lowest GAF scores, which indicate fairly severe difficulties in functioning. The Court does not find this to be reversible error, however. The failure to *mention* a piece of evidence does not mean that it was not *considered.* Here, Plaintiff's GAF assessment fluctuated, with the two lowest levels reflected within a few months of each other (March and July 2004), while Plaintiff's mood improved and his depression was noted to be controlled without side effects by December 2004 (R. 421). Additionally, as noted by the ALJ, there were no episodes of decompensation, Plaintiff reported that Ritalin improved his mood and his ability to concentrate, and he had a good response to the anti-depressants. Moreover, the ALJ's findings are supported by the opinions of two state agency psychologists, that Plaintiff's depression was not severe and resulted in only mild limitations. As such, the ALJ did not err with respect to his evaluation of Plaintiff's depression.

The RFC found by the ALJ is supported by the objective medical evidence of record, as well as the opinions of the state agency physicians and psychologists, and is therefore due to be affirmed.

**When Vocational Expert Is Necessary**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"].

*Foote*, 67 F.3d at 1558.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills."  *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  *Foote*, 67 F.3d at 1559.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.  *Foote*, 67 F.3d at 1559.

Here, Plaintiff contends that he "suffered from severe pain symptoms that were consistent with the medical evidence and laboratory findings." (Brief at 14-15.)  In fact, however, Plaintiff repeatedly reported that pain was *not* the issue that prevented him from working.  *See.* R. 102, in which Plaintiff notes "pain is not my problem," R. 121: "Physical pain is not my major problem," R. 315 (rating pain a 0 on a 1 to 10 scale).  Rather, Plaintiff asserted that other things -- stress, fever, fatigue, shortness of breath and an inability to concentrate -- were what prevented him from working (R. 89 and his testimony at hearing).  To the extent these are nonexertional impairments, the ALJ evaluated the

impairments based upon the pain standard, and found that the allegations of these impairments as disabling were not credible (R. 19, 20). This finding is supported by substantial evidence.

### Pain Standard and Credibility

The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain or other symptoms alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Applied here, the ALJ applied the pain standard to Plaintiff's allegations of disabling limitations, finding that, although Plaintiff had hepatitis C, the allegations of limitations were not supported by objective evidence confirming their severity, or their continued persistence (R. 19). Specifically, the ALJ acknowledged that Plaintiff was unable to work during the treatments, but the fatigue and flu like symptoms improved after discontinuing the treatments (R. 19-20). The ALJ noted that Plaintiff required minimal medical treatment after the third round, and pointed out specific record evidence of Plaintiff's benign findings on examination (non-tender abdomen, appetite good, pains were relieved with aspirin, etc.) (R. 20). As noted above, the medical records do *not* show constant fevers, nor is there any indication of assessment of or treatment for shortness of breath other than during the treatment period. As for fatigue, the ALJ pointed out that Plaintiff's self-described level of activities were markedly inconsistent with the crippling fatigue alleged.[6] Thus, the ALJ's finding that Plaintiff did not meet the pain standard with respect to his nonexertional limitations is supported by substantial evidence, as is the credibility determination.

A final note is in order. This case, like most cases, includes evidence which can be interpreted in various ways. While Plaintiff urges a contrary interpretation than that found by the ALJ, this is not the task of the Court on review. As set forth above, if the findings of the ALJ were made in accordance with proper standards and are supported by substantial (not necessarily uniform) evidence, the decision will be affirmed. Although here, it is clear that Plaintiff underwent a taxing course of

---

[6]The Court notes and rejects Plaintiff's contention that working out for hours in the gym every day, walking for miles, and driving for hours are "everyday activities of short duration."

therapy for his hepatitis, with expected resulting limitations, the law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511. Here, for the reasons set forth above, the ALJ concluded that Plaintiff's hepatitis did not result in the inability to do any substantial gainful activity for the requisite period of time. As there is substantial evidence to support this finding, the decision is **affirmed.**

### *CONCLUSION*

For the reasons set forth above, the decision of the Commissioner is **AFFIRMED.** The Clerk is directed to enter judgment accordingly, terminate all pending matters and close the case.

**DONE** and **ORDERED** in Orlando, Florida on February 26, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record